UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN BROWN, <br> BEVERLY DIANNE BROWN, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | No. 1:18-cv-03157-JRS-TAB |
| CITY OF INDIANAPOLIS, <br> OFFICER EMILY PERKINS, | ) <br> ) <br> ) | |
| Defendants. | ) | |

**Order on Defendant's Motion for Summary Judgment (ECF No. 55)**

After a traffic-stop encounter with Officer Emily Perkins of the Indianapolis Metropolitan Police Department ("IMPD") turned sour, Plaintiffs Kevin Brown and Beverly Dianne Brown ("Dianne Brown") brought 42 U.S.C. § 1983 and various state law claims against Perkins, the IMPD, and the City of Indianapolis. Defendants previously moved for summary judgment, (Defs.' Mot. Summ. J., ECF No. 41), and the Court dismissed all claims except those against Perkins in her individual capacity, (Entry Defs.' Mot. Summ. J., ECF No. 53). With leave of court, Perkins now moves for summary judgment on the remaining claims. (Def.'s Mot. Summ. J., ECF No. 55.) For the following reasons, Perkins's motion is granted in part and denied in part.

### I.   Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

1

law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of production. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169). If the moving party discharges its initial burden, the burden shifts to the non-moving party, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of the case. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). The Court must construe the facts and reasonable inferences arising from those facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.     Background

On October 14, 2016, at 9:18 p.m., Officer Emily Perkins was driving her police vehicle westbound on I-70. (Perkins Dep. Tr. 5:4, ECF No. 56-1; Probable Cause Aff., ECF No. 56-7.) At around mile marker 82, (*id.*), Officer Perkins says she noticed that the Browns' vehicle had quickly changed lanes many times without signaling, (Perkins Dep. Tr. 5:21–22, ECF No. 57-1). Officer Perkins activated the emergency lights on her patrol vehicle. (Probable Cause Aff., ECF No. 56-7.)

Mr. Brown, who was driving the Browns' car, noticed the emergency lights. (K. Brown Dep. Tr. 14:8–11, ECF No. 56-2.) But Mr. Brown assumed Officer Perkins was trying to pull someone else over because he "was not speeding . . . and had not done

2

anything wrong with respect to driving the car." (*Id.* at 14:3–9.) The police vehicle changed lanes, getting behind the Browns' vehicle. (*Id.* at 14:25.) Continuing to believe the lights were directed at someone else, Mr. Brown changed lanes again. (*Id.* at 15:1–4.) When the police car followed, Mr. Brown finally realized Officer Perkins was trying to get him to pull over. (*Id.* at 15:5–7.) Officer Perkins activated her car's siren. (Probable Cause Aff., ECF No. 56-7.) Mrs. Brown, who was sitting in the passenger seat, was confused why the officer was trying to stop them. (D. Brown Dep. Tr. 9:1–14, ECF No. 56-2.)

Mr. Brown began looking for a place on the highway where both his vehicle and the police car could safely pull over. (K. Brown Dep. Tr. 23:18–20, ECF No. 56-2.) Approaching the split where I-70 comes to I-65, Mr. Brown decided the area was unsafe because it was too dark and too close to overpasses—he chose to look for a safer place to stop, continuing in the lanes for the exits to downtown Indianapolis. (*Id.* 23:7–10.) He also considered stopping near the Meridian/Ohio exits but concluded that the area would be a "terrible place to stop." (*Id.* 23:11–20.) After a few minutes, Mr. Brown pulled over near mile marker 85, and Officer Perkins pulled over behind him. (Probable Cause Aff., ECF No. 56-7.) Officer Perkins and one of her supervisors later opined that this location was a dangerous place to pull over because it was on a curve in the highway and near a construction site. (*Id.*; Perkins Dep. Tr. 18:10–25, ECF No. 56-1; Hessong Dep. Tr. 8:13–18, ECF No. 56-8.)

After thirty to ninety seconds, Officer Perkins exited her car with her gun drawn. (K. Brown. Dep. Tr. 26:16–17, ECF No. 56-2.) Noticing this in his side mirror and not

3

"want[ing] to get shot," Mr. Brown yelled out his window, "[H]ey, I'm an attorney. I'm a law professor at Indiana University Maurer School of Law." (*Id*. 26:17–20.) Officer Perkins says she did not understand what Mr. Brown was yelling. (Perkins Dep. Tr. 11:21–24, ECF No. 56-1.) Officer Perkins continued, crouched and gun drawn, pointing her gun at the Browns through the driver's side window. (D. Brown Dep. Tr. 14:25–15:21, ECF No. 56-3.) Mr. Brown rolled down the window, and he discussed with Officer Perkins why he did not immediately yield. (K. Brown Dep. Tr. 28:3–25. ECF No. 56-2.) But every time Mr. Brown tried to explain that he was simply trying to find a safe place to pull over, Officer Perkins would talk over him and ask why he was fleeing. (*Id*. 46:10–13.) During the conversation, Officer Perkins "relax[ed] a little bit," although her gun was still pointed at the Browns. (D. Brown Dep. Tr. 14:25–15:4, ECF No. 56-3.) Eventually, she lowered her weapon to her side and took Mr. Brown's driver's license, registration, and bar card. (K. Brown Dep. Tr. 31:19–24, ECF No. 56-2.)

Officer Perkins returned to her vehicle, and Officers Cook and Disney arrived to assist. (*Id*. 29:7–8.) Officer Perkins approached the Browns' car again, directed Mr. Brown to exit, handcuffed him, and sat him at the guardrail. (*Id*. 30:10) She then went to the passenger's side, directed Mrs. Brown to exit, took the phone Mrs. Brown was trying to record the encounter with, threw it back into the Browns' car, handcuffed Mrs. Brown, and sat Mrs. Brown down at the guardrail about fifteen feet from her husband. (D. Brown Dep. Tr. 18:2–22, 28:3, ECF No. 56-3.) Mr. Brown says the handcuffs were overly tight but left no marks on his wrists. (K. Brown Dep. Tr. 37:6–

4

16, ECF No. 56-2.)  Mrs. Brown says Officer Perkins "conked" the handcuffs on her and overly tightened them, causing pain and leaving red marks on her wrists.  (D. Brown Dep. Tr. 32:11–14, ECF No. 56-3.)  Mrs. Brown says she was incredulous at how tight the cuffs were, (*id.* 32:16–17), but she did not say that she told Officer Perkins so.

After ten to fifteen minutes, (K. Brown Dep. Tr. 43:15–17, ECF No. 56-2), Sergeant Kinsey arrived and directed that the handcuffs be removed, (*id.* 43:5–10).  Lieutenant Hessong then arrived, directed that Mr. Brown be handcuffed again, and told Mr. Brown he would be taken to Marion County lockup.  (*Id.* 44:16; Compl. ¶¶ 34, 36.)  The officers put Mr. Brown in Officer Cook's police vehicle, and Mr. Brown complained to Officer Cook that his handcuffs were too tight.  (K. Brown Dep. Tr. 44:21–45:2, ECF No. 56-2.)  Mrs. Brown was released, though she followed the police to the sheriff's department, where she stayed until Mr. Brown's release early the next morning.  (D. Brown Dep. Tr. 39:21–22, 41:5–15, ECF No. 56-3; Compl. ¶ 38.)

Ultimately, Mr. Brown was charged with (1) resisting law enforcement, a felony; (2) resisting law enforcement, a misdemeanor; and (3) failing to signal for a turn or lane change, an infraction.  (Am. Charging Information, ECF 57-5.)  On October 10, 2017, Mr. Brown and the Marion County Prosecutor's Office entered into a traffic deferral agreement by which Mr. Brown admitted that he had failed to signal his lane changes and the charges would be dismissed in six months from the date of signing.  (Deferral Agreement, ECF No. 57-6.)

The Browns subsequently sued Officer Perkins, the IMPD, and the City of Indianapolis under 42 U.S.C. § 1983, alleging Fourth, Fifth, Eighth, and Fourteenth Amendment violations arising from their encounter with Officer Perkins on October 14, 2016. They also brought several state-law tort claims. In the course of litigation, all claims apart from those against Perkins in her personal capacity were dismissed. (Entry Defs.' Mot. Summ. J., ECF No. 53.) Perkins now moves for summary judgment on the remaining claims. (Def.'s Mot. Summ. J., ECF No. 55.)

### III. Discussion

*A. Qualified Immunity on § 1983 Claims*

Plaintiffs bring excessive force, false arrest, confinement, and false imprisonment claims under § 1983. Perkins asserts qualified immunity as to each of these theories of liability.

Under the doctrine of qualified immunity, government officials are immune from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if an officer has "fair notice" that the challenged conduct was unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "Whether an official is entitled to qualified immunity on a motion for summary judgment turns on whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established right and (2) adduced 'evidence sufficient to create a genuine issue as to

6

whether the [official] in fact committed those acts.'" *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

    1. <u>Arrest, Confinement, and False Imprisonment</u>

It is certainly clearly established that an officer who stops a vehicle to investigate a traffic infraction without reasonable suspicion violates the Fourth Amendment.[1] *See, e.g., United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *Navarette v. California*, 572 U.S. 393, 396 (2014); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Likewise, a custodial arrest effectuated without probable cause clearly violates the Fourth Amendment. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018); *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An officer may assert qualified immunity so long as there was "arguable" reasonable suspicion or probable cause to justify a stop or arrest, respectively. *See McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012) ("Arguable probable cause exists when a reasonable officer could mistakenly have believed that he had probable cause to make the arrest."); *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (same); *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011) (same).

---

[1] In their briefs, the parties speak only in terms of "probable cause." Although that is of course the standard for whether a custodial arrest passes muster under the Fourth Amendment, the encounter between the Browns and Officer Perkins is more accurately described as an investigatory stop that evolved into the custodial arrests of the Browns.

The next question is whether Plaintiffs have adduced sufficient evidence to support their allegation that Perkins violated their right to be free from seizure unsupported by even arguable reasonable suspicion or probable cause. Plaintiffs say there is a genuine issue of material fact as to whether Mr. Brown failed to signal his lane changes, in violation of Indiana Code § 9–21–8–25, *before* or *after* Officer Perkins activated the emergency lights on her vehicle. Officer Perkins says the evidence indisputably shows that the traffic infractions occurred *before* she switched on her lights.

The Court need not resolve this factual dispute because it is immaterial. Even if Mr. Brown's failure to signal occurred *after* Perkins's emergency lights switched on, Perkins had reasonable suspicion to justify an investigatory stop and probable cause to arrest Mr. Brown. Before determining whether there was arguable reasonable suspicion or probable cause, the Court must ask the threshold question of when the seizure at issue occurred. The parties apparently agree that the seizure occurred when Perkins switched on her emergency lights, but the Court will not allow the parties to stipulate to a wrong point of law. Absent any application of physical force by an officer, a seizure occurs exactly when a person submits to an officer's show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[A seizure] requires either physical force . . . or, where that is absent, submission to the assertion of authority."); *see also United States v. Griffin*, 652 F.3d 793, 801 (7th Cir. 2011) (driver was seized when he submitted to emergency lights by pulling over, not when emergency lights were turned on); *Thompson v. Whitman*, 18 Wall. 457, 471 (1874) ("A

8

seizure is a single act, and not a continuous fact[.]"). Thus, although Perkins activated her emergency lights at mile marker 82—a show of authority—Perkins did not seize the Browns until they pulled over to the side of the road just outside mile marker 85—thereby submitting to the officer's show of authority.[2]

The next question is whether this seizure of the Browns was justified by reasonable suspicion. There is no genuine dispute that Mr. Brown failed to signal his lane changes *at some point* before submitting to Perkins's emergency lights. (*Compare* Probable Cause Aff., ECF No. 56-7 (stating that Mr. Brown failed to signal both before and after Officer Perkins turned on her emergency lights), *with* Deferral Agreement, ECF No. 56-6 (securing Mr. Brown's admission that he failed to signal his lane changes but not specifying when), *and* K. Brown Dep. Tr. 64:8–20, ECF No. 56-2 (stating Mr. Brown's understanding that he admitted to failing to signal his lane changes after Perkins turned on her emergency lights but before he pulled over).) Even if Mr. Brown's lane-switching violations happened only *after* Perkins switched on her emergency lights, Perkins nevertheless would have observed those violations

---

[2] The authorities Plaintiffs cite for the proposition that a seizure begins as soon as emergency lights are switched on involve stray, uncareful language or are simply wrong or outdated. In *United States v. Bias*, the court wrote that a seizure "began when [the officer] activated his vehicle's lights." No. 3:08-CR-52, 2008 WL 4683217, at *8 (E.D. Tenn. Oct. 20, 2008). That case was a run-of-the-mill exclusionary-rule case where the Court did not engage in any analysis under *Hodari D. State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993), is inapposite for the same reason. The court in *United States v. Jones* said a stop was "initiat[ed]" when law enforcement activated their emergency lights, but a *Hodari D.* issue was not at play because the defendant "pulled over immediately." 428 F. Supp. 2d 497, 501 (W.D. Va. 2006). Finally, the law review article Plaintiffs cite was published before the Supreme Court clarified the seizure doctrine in *Hodari D. See* Edwin J. Butterfoss, *Bright Line Seizures: The Need for Clarity in Determining When Fourth Amendment Activity Begins*, 79 J. CRIM. L. & CRIMINOLOGY 437, 456 n.109 (1988).

9

before she seized the Browns. And if Perkins observed Mr. Brown commit the traffic infraction before he submitted to her show of authority, then the stop and later arrest of Mr. Brown were respectively justified by reasonable suspicion and probable cause that Mr. Brown violated Indiana Code § 9–21–8–25.[3]

Plaintiffs protest that this outcome cannot be right, as "it would be a Catch-22 indeed if an officer could initiate a traffic stop for no reason, and then rely on the confused law-abiding driver's failure to properly signal a lane change when attempting to yield way to the police vehicle as 'probable cause' for the unlawful stop and seizure." (Pls.' Mem. Opp'n Defs.' Mot. Summ. J., ECF No. 60 at 8.) Catch-22 or not, the Supreme Court's interpretation of the Fourth Amendment commands the Court's ruling that the seizure of Mr. Brown was reasonable. Indeed, the facts of *Hodari D.* reflect the situation Plaintiffs deride—there, an officer started chasing a youth without reasonable suspicion of any wrongdoing, the youth discarded a rock of crack cocaine while fleeing, and the youth was later arrested. 499 U.S. at 623. Although the officer's pursuit was a show of authority for no reason, and although the officer relied on the confused youth's panicked tossing of evidence to develop probable cause to arrest him, the Supreme Court held that no seizure of the youth occurred until he was physically apprehended. *Id.* at 629. Consequently, the discarded crack cocaine was not the fruit of an illegal seizure, and the drug in turn created probable cause to

---

[3] Recall that a police officer may arrest a person for even non-violent misdemeanors or traffic infractions without violating the Fourth Amendment. *See Williams v. Brooks*, 809 F.3d 936, 943 (7th Cir. 2016) (arrest for failing to signal lane change did not violate Fourth Amendment); *Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

10

arrest the youth. *Id*. The situation with Perkins and Mr. Brown is not meaningfully distinguishable. Perkins is therefore entitled to judgment as a matter of law on Mr. Brown's § 1983 claims for false arrest, confinement, and false imprisonment.

What about Mrs. Brown? As a passenger, she submitted to Perkins's show of authority at the same time as Mr. Brown did. *See Brendlin v. California*, 551 U.S. 249, 262 (2007) (passenger in a stopped vehicle "submit[s] by staying inside"). Mrs. Brown's initial detention as a passenger was justified by Perkins's observations of the driver Mr. Brown committing a traffic infraction, which supplied reasonable suspicion for an investigatory stop of the vehicle and its occupants. *See United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015) ("[A] seizure, of driver and passengers alike, occurs every time police stop a car that has a passenger, but is lawful if there's reason to think the driver is violating a traffic law . . . ."); *Brendlin*, 551 U.S. at 257–58 (passenger was seized and could challenge legality of traffic stop).

However, Perkins took the additional step of handcuffing Mrs. Brown for ten to fifteen minutes. Outside of the "rare case" in which an investigative stop could be effectuated safely only by handcuffing a suspect, applying handcuffs typically constitutes an arrest. *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir. 1989) (handcuffs did not transform *Terry* stop into arrest only because of dangerous situation involving defendant's illegal explosives and ammunition). Seeing in the record no such exceptional safety concerns with respect to Mrs. Brown, not to mention Perkins's approach to the car with gun drawn, the Court finds that Mrs. Brown was custodially arrested. The next question is whether probable cause supported Mrs. Brown's arrest. Perkins

11

does not direct the Court's attention to any facts justifying Mrs. Brown's arrest, and the Court's own review of the record is unavailing. Unlike Mr. Brown, Mrs. Brown violated no traffic laws for which she could be arrested. She was not driving. In any event, Perkins's moving brief focuses on Mr. Brown's arrest and supplies no basis for Mrs. Brown's arrest. (*See* Def.'s Mem. Supp. Summ. J., ECF No. 56 at 12–16.) Perkins has therefore failed to meet her initial burden of production as the movant, *see Modrowski*, 712 F.3d at 1168, and she is not entitled to summary judgment as to Mrs. Brown's § 1983 claim for false arrest and false imprisonment.[4]

    2. <u>Excessive Force</u>

At a general level, people have the "clearly established right to be free from excessive force" in dealing with the police. *Baird v. Renbarger*, 576 F.3d 340, 347 (7th Cir. 2009). Force is excessive only if an officer "use[s] greater force than [i]s reasonably necessary to make an arrest." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006). In evaluating whether a use of force was reasonable, the Court considers factors like the "severity of the crime at issue," whether the suspect posed an "immediate threat to safety," and whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Baird*, 576 F.3d at 344 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Finally, the Court is mindful that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain,

---

[4] Because her interactions with Officer Perkins did not result in Mrs. Brown's incarceration or conviction, she does not have a § 1983 claim for unconstitutional confinement. *See Reed v. City of Chicago*, 867 F. Supp. 714, 717 (N.D. Ill. 1994), *aff'd*, 77 F.3d 1049 (7th Cir. 1996).

and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Plaintiffs allege two variants of their excessive-force claim, which the Court will consider in turn. First, they allege Perkins's pointing of her gun at Plaintiffs constituted excessive force. Second, they claim that Perkins used excessive force in the course of handcuffing Plaintiffs.

It is clearly established that, if an officer seizes an individual at gunpoint when there is "no hint of danger," the officer violates the individual's Fourth Amendment right to be free from excessive force. *Baird*, 576 F.3d at 347 (pointing submachine gun at people detained during search of business place was unreasonable); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 773–74 (7th Cir. 2000) (pointing gun at elderly man posing no safety risk after realizing he was not the desired suspect was unreasonable); *McDonald v. Haskins*, 966 F.2d 292, 294–95 (7th Cir. 1992) (pointing gun at nine-year-old during search was unreasonable). Furthermore, Plaintiffs have adduced enough evidence to create a genuine issue of material fact as to whether Perkins had "reason to fear danger." *Baird*, 576 F.3d at 346. The worst misconduct Mr. Brown admits to is changing lanes without signaling—not any crime indicating a serious risk of harm to the public or the police. (Deferral Agreement, ECF No. 56-6.) Officer Perkins testified that the three-mile chase before Mr. Brown yielded led her to fear for her own safety. (Perkins Dep. Tr. 11:2–10, 19:19–20:1, ECF No. 56-1.) But, crediting the Browns' rendition of why they did not immediately stop (because there was no safe place to pull over within those initial three miles), as the Court

13

must, a jury could reasonably find that Mr. Brown's delay in stopping was objectively justified by safety concerns and was not a reason for an officer to view the Browns as a threat. Perkins also attempts to justify the use of her gun by pointing out that she was outnumbered and dealing with unknown persons. (*Id.* at 11:2–10.) But the Seventh Circuit has previously found those circumstances insufficient to warrant summary judgment on qualified-immunity grounds given similar facts. *See Baird*, 576 F.3d at 344 (reasonable jury could find detainees posed no threat even though officer "did not know the identities of those who might be on the scene and . . . was outnumbered"). Moreover, Mr. Brown says that, before Perkins approached the vehicle with her gun drawn, he shouted at her that he was a professor and an attorney, (K. Brown Dep. Tr. 2:16–20, ECF No. 56-2), from which a reasonable person could infer that the Browns posed no risk of danger. Viewed in the light most favorable to Plaintiffs, the record could lead a reasonable jury to find for Plaintiffs on an excessive-force theory. Thus, the excessive-force claim survives summary judgment insofar as it is based on Officer Perkins initially pointing her gun at the Browns.

Plaintiffs also bring an excessive-force claim based on Perkins's handcuffing conduct. Caselaw clearly establishes that "an officer may not *knowingly* use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002)) (emphasis added). As stated above, Plaintiffs have presented sufficient evidence such that a jury could find that they presented no risk of flight or injury to

Officer Perkins. However, Plaintiffs have failed to show that Officer Perkins *knowingly* over-tightened their handcuffs in a way calculated to inflict more pain. For instance, Plaintiffs have not pointed to any evidence that they told Officer Perkins the handcuffs were causing pain or that they had some disposition making them especially susceptible to injury from handcuffs.[5] Such facts are needed to defeat Officer Perkins's assertion of qualified immunity. *Compare Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013) (no qualified immunity where plaintiff had informed police of aggravating medical conditions and pain from tight handcuffs that officer refused to loosen), *with Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020) (qualified immunity where arrestee never complained or otherwise informed police that tight handcuffs restricted his breathing). Thus, Officer Perkins is entitled to qualified immunity on the excessive-force claim insofar as that claim rests on the way Perkins handcuffed the Browns.

*B. Assault and Battery*

The state law claims for assault and battery are contingent on whether Officer Perkins used excessive force. *See Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) ("If an officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery."); *Thompson v. City of Indianapolis*, 208 F. Supp. 3d 968, 977 (S.D. Ind. 2016) ("Under Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest."); Ind. Code § 35–41–3–3(b) ("A law

---

[5] Mr. Brown did complain at least once that his handcuffs were too tight to Officer Cook. (K. Brown Dep. Tr. 44:21–45:2, ECF No. 56-2.) But Officer Cook is not a defendant, and the fact that Mr. Brown complained about the handcuffs to a different officer is irrelevant to whether Officer Perkins knew the handcuffs were overly tight.

enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest."). The analysis of what force is excessive under Indiana law mirrors the excessive-force analysis under the Fourth Amendment. *See Thompson*, 208 F. Supp. 3d at 977. Because the Court has already found that Perkins is not entitled to judgment as a matter of law on the excessive-force claim premised on Perkins's use of her gun, Perkins is also not entitled to judgment as a matter of law on Plaintiffs' assault and battery claims.

C. *Intentional Infliction of Emotional Distress*

Officer Perkins argues that she is entitled to judgment as a matter of law on the intentional-infliction-of-emotional-distress ("IIED") claim because the "Indiana Tort Claims Act prohibits tort suits against government employees personally for conduct within their scope of employment." *Hendricks v. New Albany Police Dep't*, 749 F. Supp. 2d 863, 869 (S.D. Ind. 2010) (citing *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 902 (S.D. Ind. 2009)); *see also* Ind. Code § 34–13–3–5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.").

Plaintiffs did not defend their IIED claim. By not responding, Plaintiffs forfeited any opposing arguments. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (explaining that a party's "failure to raise a timely argument" results in that argument's forfeiture). Hence, Plaintiffs' claim for IIED is dismissed with prejudice.

## IV. Conclusion

Officer Perkins's motion for summary judgment is **granted in part** and **denied in part**. Plaintiffs' excessive-force claims as to Perkins's use of her gun, Mrs. Brown's false-arrest and false-imprisonment claim as to her arrest, and the assault and battery claims shall proceed to trial. All other claims are **dismissed with prejudice**.

Finally, as a matter of housekeeping, the clerk is directed to remove the City of Indianapolis from the docket, as all claims against the City of Indianapolis were dismissed in a previous order. (*See* Entry Defs.' Mot. Summ. J., ECF No. 53.)

**SO ORDERED.**

Date: 12/17/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties via CM/ECF.